UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LUCKSIRI LERCHAICHANAKUL, ) | |
| ) | |
| Plaintiff(s), ) | |
| ) | |
| vs. ) | Case No. 4:22-CV-1002 SRW |
| ) | |
| KILOLO KIJAKAZI, ) | |
| Commissioner of Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant(s). ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on review of an adverse ruling by the Social Security Administration. The Court has jurisdiction over the subject matter of this action under 42 U.S.C. § 405(g). The parties consented to the exercise of authority by the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Plaintiff filed a Brief in support of the Complaint. ECF No. 14. Defendant filed a Brief in Support of the Answer. ECF No. 15. The Court has reviewed the parties' briefs and the entire administrative record, including the transcripts and medical evidence. Based on the following, the Court will affirm the Commissioner's decision.

**I.      Factual and Procedural Background**

On August 11, 2020, Plaintiff Lucksiri Lerchaichanakul protectively filed an application for disability insurance benefits under Title II, 42 U.S.C. §§ 401, *et seq.* with an alleged onset date of June 1, 2018. Tr. 54-61, 142-45. Plaintiff's application was denied on initial consideration and reconsideration. Tr. 64-71. On April 21, 2021, she requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 79-80.

Plaintiff appeared for a telephonic hearing, with the assistance of counsel, on September 22, 2021. Tr. 31-53. Plaintiff testified concerning her disability, daily activities, functional limitations, and past work. *Id*. The ALJ also received testimony from vocational expert ("VE") Stella Josette Frank, M.A., CRC, CDMS, CCM. *Id*. at 48-51. On October 28, 2021, the ALJ issued an unfavorable decision finding Plaintiff not disabled. Tr. 13-30. Plaintiff filed a request for review of the ALJ's decision with the Appeals Council. Tr. 139-41. On July 26, 2022, the Appeals Council denied Plaintiff's request for review. Tr. 1-7. Accordingly, the ALJ's decision stands as the Commissioner's final decision.

With regard to Plaintiff's testimony, medical records, and work history, the Court accepts the facts as presented in the parties' respective statements of facts and responses. The Court will discuss specific facts relevant to the parties' arguments as needed in the discussion below.

**II.     Legal Standard**

A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" § 1382c(a)(3)(B).

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability. 20 C.F.R. § 416.920(a)(1). First, the Commissioner considers the

claimant's work activity. If the claimant is engaged in substantial gainful activity, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a severe impairment "which significantly limits claimant's physical or mental ability to do basic work activities." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *see also* 20 C.F.R. § 416.920(a)(4)(ii). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 416.920(c), 416.920a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(5)(i). An RFC is "defined as the most a claimant can still do despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011); *see also* 20 C.F.R. § 416.945(a)(1). While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016).

Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Ultimately, the claimant is responsible for *providing* evidence relating to his or her RFC, and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work which exists in significant numbers in the national economy shifts to the Commissioner. *See Brock v. Astrue*, 574 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work which exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. § 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. *Id*. At Step Five, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant. *Hensley*, 829 F.3d at 932.

If substantial evidence on the record as a whole supports the Commissioner's decision, the Court must affirm the decision. 42 U.S.C. §§ 405(g); 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. Under this test, the court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision." *Reece v. Colvin*, 834 F.3d 904, 908 (8th

Cir. 2016). The Court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." *Id*. The ALJ will not be "reverse[d] merely because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently." *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 370 (8th Cir. 2016).

### III.     The ALJ's Decision

Applying the foregoing five-step analysis, the ALJ found Plaintiff met the insured status requirements of the Social Security Act until March 31, 2019. Tr. 18. Plaintiff has not engaged in substantial gainful activity during the period from her alleged onset date of disability on June 1, 2018, through her date last insured for Title II disability insurance benefits on March 31, 2019. *Id*. During the relevant period, Plaintiff had the severe impairments of "[d]egenerative joint disease of the right shoulder with impingement syndrome, status-post right rotator cuff repair, degenerative disc disease of the cervical and lumbar spine and carpal tunnel syndrome." Tr. 18-19. Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. Tr. 19. The ALJ found Plaintiff had the following RFC through the date last insured:

> [Plaintiff] had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she should have never been required to climb ladders, ropes or scaffolds. She should have never been required to crawl. She should have never been required to reach overhead. She could frequently reach in all other directions. She could frequently handle and finger with her bilateral upper extremities. In addition, she should have never been exposed to hazards, such as unprotected heights and dangerous machinery.

*Id.*

The ALJ found, through March 31, 2019, her date last insured for Title II disability insurance benefits, she was capable of performing her past relevant work as a financial analyst as this work did not require the performance of work-related activities precluded by her RFC. Tr. 24. The ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, at any time from June 1, 2018 through March 31, 2019. Tr. 23.

## IV.   Discussion

Plaintiff raises three points of error: (1) the ALJ failed to properly evaluate the medical opinion evidence of State Agent Dr. Michael O'Day, and treating physician Dr. Sean A. McIntosh; (2) the RFC is not supported by substantial evidence or some medical evidence; and (3) the decision fails to properly evaluate Plaintiff's reports of pain.

### A.   Evaluation of the Medical Opinion Evidence

Claims filed after March 27, 2017, like Plaintiff's, require the ALJ to evaluate medical opinions pursuant to 20 C.F.R. § 404.1520c. This provision states the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [Plaintiff's] medical sources." 20 C.F.R. § 404.1520c(a). Rather, an ALJ is to evaluate the persuasiveness of any opinion or prior administrative medical finding by considering the: (1) supportability of the opinion with relevant objective medical evidence and supporting explanations; (2) consistency with the evidence from other medical sources and nonmedical sources in the claim; (3) relationship with the plaintiff, including length, purpose, and extent of treatment relationship, whether it is an examining source, and frequency of examination; (4) specialization; and (5) other relevant factors. 20 C.F.R. § 404.1520c(c).

The rules make clear that supportability and consistency are the most important factors; therefore, an ALJ must explain how he or she considered these factors in the decision. 20 C.F.R. § 404.1520c(b)(2). An ALJ may, but is not required to, explain how he or she considered the remaining factors. *Id. See Brian O. v. Comm'r of Soc. Sec.*, 2020 WL 3077009, at *4-5 (N.D.N.Y. June 10, 2020) (quoting 20 C.F.R. § 404.1520c(a), (b)) ("Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still 'articulate how he or she considered the medical opinions' and 'how persuasive he or she finds all of the medical opinions.'" (alterations omitted)).

### 1. Opinion of Dr. Michael O'Day

On November 14, 2020 and February 20, 2021, State Agent Dr. O'Day completed a non-examining medical evaluation for Plaintiff's disability benefits application and reconsideration request. Tr. 59, 65. In his first November 2020 administrative finding, Dr. O'Day indicated the underlying medical record lacked "functional information for the period in review" and, therefore, had "insufficient information to determine severity or establish disability." Tr. 59. In his second February 2021 administrative finding, Dr. O'Day similarly wrote: "there is insufficient medical evidence available to determine disability through 03/31/2019, which is her DLI (Date Last Insured). Due to the lack of medical evidence, a denial is appropriate." Tr. 65.

In making the RFC determination, the ALJ considered Dr. O'Day's opinions of insufficient evidence. The ALJ found Dr. O'Day's assessments of the record to be "wholly unpersuasive" because the medical evidence "clearly shows that some limits on the claimant were warranted during the relevant period, specifically, those detailed in the residual capacity finding above, which are fully appropriate based on the evidence at that time." Tr. 23.

Plaintiff argues the ALJ erred in evaluating Dr. O'Day's assessments because the ALJ failed to identify any specific evidence that is either consistent or inconsistent and referred only to "evidence at that time" leaving it unclear as to what evidence was being referred, or if Dr. O'Day had access to the evidence referenced. ECF No. 14 at 4.

The Court does not find error in the ALJ's evaluation of Dr. O'Day's November 14, 2020 and February 20, 2021 administrative findings. "The paragraph concerning the ALJ's evaluation of [a medical] opinion cannot be read in isolation but must be read as part of the overall discussion of plaintiff's RFC assessment." *Trosper v. Saul*, 2021 WL 1857124, at *5 (E.D. Mo. May 10, 2021). The ALJ found Dr. O'Day's opinions to be unpersuasive because there was evidence in the record to show Plaintiff did have functional limitations due to her severe medical impairments between onset date of June 1, 2018, and her last day insured on March 31, 2019, which was the relevant time period of the ALJ's determination. The ALJ discussed those records throughout her determination, which showed Dr. O'Day's finding of "insufficient evidence" was neither consistent nor supported.

Within the ALJ's determination, she first acknowledged that prior to Plaintiff's alleged onset date of June 1, 2018, she complained of right shoulder and ankle pain and reported a history of bursitis. Tr. 21, 227-28. In July of 2017, an X-ray of her right shoulder revealed mild acromioclavicular joint arthritis, and Plaintiff was diagnosed with impingement syndrome of the right shoulder and Achilles tendinitis with a tight heel cord on the right. Tr. 21, 227-28, 286, 574. In October of 2017, a lumbosacral spine X-ray showed "mild L2-L3 retrolisthesis and mild degenerative disc disease at T11-T2, L2-L3 and L4-L5," along with left sacroiliac joint dysfunction. Tr. 21, 231-22, 284-85, 573. The ALJ observed that despite such complaints and

8

radiological results, January 2018 treatment notes indicated Plaintiff was able to ambulate without difficulty and had full range of motion in her neck. Tr. 21, 234.

On her alleged date of onset, Plaintiff appeared to Washington University Orthopedics for a follow up appointment regarding neck and shoulder pain, which she described as a dull aching pain worsening with movement of her arms and an inability to lift her right arm past ninety degrees without pain or discomfort. Tr. 21, 245-46, 575-76. The ALJ observed that despite her complaints, she exhibited a full active range of motion; however, she had pain with her initial rotation, flexion past 90 degrees and abduction. Plaintiff had full ("5/5") muscle strength in her bilateral upper extremities; normal gait; an ability to tandem walk, heel walk and toe walk; had no reported pain or tenderness in her cervical spine region; some altered sensation in the index and middle finger of her right hand; full bilateral shoulder range of motion without provocation of pain; and negative radiographic imaging of her shoulders. *Id.* Plaintiff's diagnosis was listed as degenerative disc disease of the cervical spine with possible C5-C6 radiculopathy on the right and right shoulder impingement syndrome. *Id. See also* Tr. 571-72. She was recommended to participate in three weeks of physical therapy and, if no improvements were made, an MRI would be ordered. *Id.*

In October of 2018, Plaintiff sought treatment from a specialist due to a lack of improvement. Tr. 22, 514-16. During the visit, Plaintiff reported that although she had experienced right shoulder pain and stiffness for "a couple of years," her pain had increased over the past three months and her shoulder "locked." Tr. 22, 514-16. The examining physician recommended steroid injections followed by structured posterior capsular stretching. Tr. 515. Plaintiff underwent injection treatment as recommended. Tr. 278-81, 517-18.

9

One month later, Plaintiff reported feeling a "painful pop associated with lifting." Tr. 521-22. An MRI of her right shoulder revealed severe bursitis, a small subacromial spur, mild acromioclavicular joint chondrosis, and 50% tear of the rotator cuff. Tr. 22, 274-75. On January 21, 2019, Plaintiff underwent surgery described as right shoulder arthroscopic rotator cuff repair and subacromial decompression with possible allograft rotation medical patch. Tr. 22, 249. The records reveal no surgical complications and same day discharge. Tr. 22, 249-71.

The ALJ took note of Plaintiff's post-operative follow up on April 16, 2019, in which Dr. Jay Donovan Keener recorded Plaintiff's reports of feeling better overall, despite intermittent hand numbness and shoulder pain. Tr. 22, 527-28. Plaintiff told Dr. Keener she had returned to work, but was concerned with the amount of physical activity required of her. *Id.* Dr. Keener indicated in the treatment notes that Plaintiff was attending physical therapy twice per week but was frequently tardy, which prevented her from obtaining the full benefits of therapy. *Id.* Dr. Keener opined that Plaintiff's complaints of stiffness was a good sign of healing, but Plaintiff did not understand the stiffness to be normal after surgery. *Id.* Plaintiff was recommended to continue physical therapy twice per week and focus on stretching. *Id.* Dr. Keener provided her with a work restriction of lifting up to ten pounds only, and prohibited her from resisted pushing or pulling activities and overhead lifting. *Id.* In analyzing these physical restrictions, the ALJ wrote, "[t]here is nothing convincing in the record to suggest these restrictions were permanent since the claimant was less than three months post-surgery and was continuing physical therapy." Tr. 22.

The ALJ also considered Plaintiff's history of carpal tunnel symptoms. Tr. 22. The ALJ cited to a May 21, 2019 treatment note in which her treating physician acknowledged her neurological symptoms were consistent with carpal tunnel syndrome; however, Plaintiff was

10

unwilling to consider any surgical intervention. Tr. 532. In lieu of surgery, her physician directed her to perform "nerve gliding exercises," continue "bracing," and consult a rheumatologist for the "arthritic-type pains in the joints." *Id.* The ALJ referenced Plaintiff's May 28, 2019 visit with Dr. Keener, who indicated she was able to continue employment. Tr. 22, 533. Plaintiff attended physical therapy twice per week, and she exhibited minimal and slow improvement with her shoulder. *Id.*

The ALJ recognized there were numerous treatment notes within the underlying record related to the exacerbation of her back and neck pain after she was involved in a motor vehicle accident, a diagnosis of ovarian cancer and a brain tumor, and the onset of left shoulder and ankle pain. Tr. 23. However, the accident, cancer diagnoses, and onset of additional pain occurred *after* March 31, 2019, the date Plaintiff was last insured in this action. *Id.* The Court notes that while the underlying record is 3,793 pages, the majority of the treatment notes were created after her date last insured. *See* Tr. 325-78, 539-565, 588-722, 759-72, 784-925, 929-2124, 2128-3194, 3198-3572, 3573-3633, 3649-3726, 3730-3732, 3736-3763. An ALJ is not required to consider these records because the Plaintiff has the burden of establishing the existence of a disability *on or before* the expiration of her insured status. *See Basinger v. Heckler*, 725 F.2d 1166, 1169 (8th Cir. 1984).

Despite the numerous records outside of the relevant period, the ALJ found there was enough information to formulate an RFC. The ALJ explained:

> Nothing convincing exists in the record to suggest that the claimant's right shoulder symptoms, her carpal tunnel symptoms and her back pain are not fully accounted for with the limitations detailed in the residual functional capacity finding above. While she was still complaining of some problems with overhead motion and weakness six months after her shoulder surgery in August 2019, the undersigned added a restriction to no overhead reaching to account for this limitation and the vocational expert testified that the claimant was capable of returning to her past relevant work as financial analyst, despite this limitation and

>the other residual functional capacity restrictions detailed above. These limitations are sufficient to account for all reported symptoms during the relevant period.

Tr. 22.

An ALJ may disagree with a State Agent consultant that there was insufficient evidence to rate a claimant's limitations and, instead, find the existing record was sufficient to determine the severity of Plaintiff's impairments. *Campbell v. Kijakazi*, 2023 WL 2139217, at *5 (E.D. Mo. Feb. 21, 2023). *See also Leach v. Kijakazi*, 2023 WL 2707437, at *6, n.9 (E.D. Mo. Mar. 30, 2023) (although there might have been insufficient evidence presented to a consulting physician, an ALJ may later find that additional evidence presented at the hearing level can provide enough information to evaluate a plaintiff's disability and impairments). If anything, the ALJ accorded Plaintiff the benefit of the doubt by finding that the record showed she suffered from a disability with limitations despite Dr. O'Day's insufficiency conclusion. *See, e.g.*, *Leach*, 2023 WL 2707437, at *8 (an opinion that the record has insufficient evidence to support a functional limitation finding is "effectively a finding that Plaintiff has no functional limitations and could perform the full range of work at any level.").

The ALJ's determination addresses numerous medical records showing that Dr. O'Day's opinion was not supported or consistent with the record. Therefore, the Court finds no error as to the ALJ's evaluation of Dr. O'Day's administrative findings.

### 2. Opinion of Dr. Sean McIntosh

In addition to the records summarized above, the ALJ also considered the Physical RFC Questionnaire completed on September 7, 2021, by Plaintiff's treating physician, Dr. McIntosh. Tr. 3766-70. The Questionnaire listed Plaintiff's diagnoses as: "right shoulder pain, right frozen shoulder, ovarian cancer, [illegible], dizziness, [and] neck pain." Tr. 3766. Dr. McIntosh indicated he had been treating Plaintiff "intermittently since 8/28/2018." *Id.* He described her

symptoms as "bilateral shoulder pain, tailbone pain, dizziness, neck pain, [and] pain down left leg," and indicated she was "unable to work due to pain." *Id.* He opined she was able to sit, stand, or walk less than 2 hours in an 8-hour workday; needed to walk for 15 minutes every 20 to 30 minutes; required unscheduled breaks approximately every 30 minutes; could never lift over 10 pounds; had significant limitations using hands and fingers; and would likely be absent from work more than 4 days per month. Tr. 3767-70.

Dr. McIntosh completed the RFC Questionnaire approximately two and a half years after March 31, 2019, Plaintiff's date last insured. Tr. 23. Thus, the ALJ determined that the limitations he opined were unpersuasive. The ALJ explained:

> The records show that the claimant's consistent complaints of migraine headaches, dizziness and left arm pain did not begin until after her November 2019 motor vehicle collision, which was more than eight months after her eligibility for benefits expired on March 31, 2019. Dr. McIntosh's opinion is persuasive only to the extent that it is consistent with the limitations detailed in the residual functional capacity finding above during the relevant period, especially in light of his own treatment notes showing that aside from her development of left shoulder pain in January 2021, her physical and mental status examinations were otherwise normal in January and March 2021. (Tr. 590, 3753). The assessed limitations are sufficient to account for the claimant's verifiable symptoms during the relevant period and the vocational expert testified that the claimant was capable of performing her past work as a financial analyst, despite her impairments.

Tr. 23.

Plaintiff argues the ALJ inappropriately evaluated Dr. McIntosh's RFC assessment. ECF No. 14 at 5. Plaintiff points to several medical records to show she complained about right shoulder, right ankle and heel pain, neck pain, dizziness, lightheadedness, left shoulder pain, and numbness and tingling in her right hand and fingers during the relevant time period. *Id.* (citing Tr. 228-30, 239, 245-46, 282, 312, 514, 520-21, 527-28). Plaintiff asserts these records evidence Dr. McIntosh's opinion was supported by the underlying treatment notes. Additionally, Plaintiff

13

contends the ALJ did not clearly explain how Dr. McIntosh's RFC Questionnaire was inconsistent with his own treatment notes. *Id.* Plaintiff also takes issue with the ALJ's failure to contact Dr. McIntosh to obtain clarification as to what time period the Questionnaire covered. *Id.* at 5-6.

The Court does not agree with Plaintiff's arguments. Even if substantial evidence would have supported an opposite decision, or the reviewing court might have reached a different conclusion had it been the finder of fact, the Court must affirm the Commissioner's decision if the record as a whole contains substantial evidence to support it. *See McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010) (explaining that if substantial evidence supports the Commissioner's decision, the court "may not reverse, even if inconsistent conclusions may be drawn from the evidence, and even if [the court] may have reached a different outcome"); *Locher v. Sullivan*, 968 F.2d 725, 727 (8th Cir. 1992) (explaining a court may not reverse merely because substantial evidence would have supported an opposite decision).

Although Plaintiff points to several records to evidence the supportability of Dr. McIntosh's opinion, it is not this Court's job to reweigh the evidence. Moreover, the records cited by Plaintiff are either outside the relevant time period or do not contradict the ALJ's determination "that consistent complaints of migraine headaches, dizziness and left arm pain did not begin until after her November 2019 motor vehicle collision, which was more than eight months after her eligibility for benefits expired on March 31, 2019." Additionally, the ALJ clearly explained that Dr. McIntosh's RFC Questionnaire was inconsistent with "his own treatment notes showing that aside from her development of left shoulder pain in January 2021, her physical and mental status examinations were otherwise normal in January and March 2021." Tr. 23 (citing Tr. 590, 3753).

The Court finds no error in the ALJ's decision not to recontact Dr. McIntosh. "Well-settled precedent confirms that the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case." *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010) (quoting *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004)). "An ALJ should recontact a treating or consulting physician if a critical issue is undeveloped." *Johnson v. Astrue*, 627 F.3d 316, 320 (8th Cir. 2010). "[T]he burden of persuasion to prove disability and demonstrate RFC remains on the claimant." *Vossen*, 612 F.3d at 1016. "While an ALJ does have a duty to develop the record, this duty is not never-ending and an ALJ is not required to disprove every possible impairment." *McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011). The record in this case was not underdeveloped. In reviewing Dr. McIntosh's opinion, the ALJ noted the diagnoses and impairments included in the Questionnaire that were not present or severe during the relevant time period. In addition, to the extent Dr. McIntosh's opinion was consistent with respect to limitations present between June 1, 2018 and March 31, 2019, the ALJ was able to determine the opinion was persuasive and those limitations were adequately addressed in the ALJ's RFC. Tr. 23. The Court finds no error.

### B.  Formulation of the RFC

Plaintiff argues the ALJ's decision lacks medical evidence addressing Plaintiff's ability to function in the workplace because no physician, other than Dr. McIntosh, provided an RFC opinion.

Although some medical evidence must support an RFC, *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016), it is not the only evidence an ALJ considers, *see Masterson v. Barnhart*, 363 F.3d 731, 737-38 (8th Cir. 2004) (noting that RFC is based on all the record evidence); *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (same). As for medical opinions in particular, there

15

is no requirement that an RFC finding be supported by a specific medical opinion. *Hensley*, 829 F.3d at 932 (citing *Myers v. Colvin*, 721 F.3d 521, 526-27 (8th Cir. 2013) (affirming RFC without medical opinion evidence); *Perks v. Astrue*, 687 F.3d 1086, 1092-93 (8th Cir. 2012) (same)); *see also Kinder v. Berryhill*, 2017 WL 1177707, at *7-8 (E.D. Mo. March 30, 2017) ("The ALJ is required to rely upon medical evidence, but not medical opinion evidence.").

As discussed above, the ALJ did not completely reject Dr. McIntosh's opinion, as evidenced by the fact he limited Plaintiff to a restricted range of light work. The ALJ also considered, in detail, Plaintiff's radiological imaging results, physical examination assessments, her own reports of pain, surgical records, progress with physical therapy, carpal tunnel symptoms and post-operative treatment. Thus, the ALJ appropriately considered the medical record in determining the RFC.

Where substantial evidence supports the ALJ's decision, it may not be reversed merely because substantial evidence may support a different outcome. *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993) (*citing Locher v. Sullivan*, 968 F.2d 725, 727 (8th Cir. 1992)). The record as a whole provides a sufficient basis for the ALJ's decision, and does not support Plaintiff's argument that the ALJ relied on her own lay opinion. Therefore, the Court finds the ALJ's RFC determination was properly based on some medical evidence as the law requires.

### C. Evaluation of Plaintiff's Pain

Lastly, Plaintiff argues the ALJ erred by failing to make an express "credibility" determination detailing reasons the ALJ discredited her testimony regarding pain and by not discussing the *Polaski* factors. ECF No. 14 at 8-9.

16

As an initial matter, Social Security Ruling 16-3p[1] eliminated the word "credibility" from the analysis of subjective complaints, replacing it with "consistency" of a claimant's allegations with other evidence. SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017); 20 C.F.R. §§ 404.1529. The Rule incorporates the familiar factors from *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984) which previously guided an ALJ's analysis of subjective complaints, including: objective medical evidence, the claimant's work history, and other evidence relating to (1) the claimant's daily activities; (2) the duration, frequency and intensity of the symptoms (*i.e.*, pain); (3) precipitating and aggravating factors; (4) the dosage, effectiveness and side effects of medication; and (5) any functional restrictions. *See Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019). If the evidence as a whole "undermines" or "cast[s] doubt on" a claimant's testimony, an ALJ may decline to credit a claimant's subjective complaints. *Id.* If the ALJ explicitly discredits a claimant's subjective complaints and gives good reasons, the Eighth Circuit has held it will defer to the ALJ's judgment, even if the ALJ does not cite to *Polaski* or discuss every factor in depth. *See Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007); *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004).

Although the ALJ in this case did not cite specifically to *Polaski*, she affirmatively stated in her decision that she considered all of Plaintiff's symptoms based on the requirements of 20 C.F.R. §§ 404.1529 and 416.929 and Social Security Ruling 16-3p. Tr. 20. The ALJ summarized Plaintiff's own testimony regarding her limitations, stating "she has been unable to work since June 2018 due to right shoulder, neck and low back pain," felt as if she "was losing function in her right hand after undergoing surgical intervention to her right shoulder," "continues to experience significant neck and shoulder pain severe enough to affect her sleep," has "difficulty

---

[1] The revised Ruling became effective on March 27, 2017. It applies to determinations or decisions made by the Social Security Administration on or after March 28, 2016.

17

dressing herself due to right shoulder pain," and developed additional pain after a November 2019 car accident. Tr. 20. However, the ALJ held, that after consideration of the record as a whole, "the objective evidence [did] not support the severity of the claimant's complaints" for the nine-month period from June 1, 2018 to March 31, 2019. Tr. 20-21.

The ALJ supported her determination by citing to Plaintiff's treatment and progress with her symptoms. The ALJ acknowledged that prior to Plaintiff's alleged onset date she had a history of right shoulder and ankle pain, bursitis, mild acromioclavicular joint arthritis, impingement syndrome of the right shoulder, Achilles tendinitis with a tight heel cord on the right, mild retrolisthesis, and mild degenerative disc disease. Tr. 21, 227-28, 231-22, 284-86, 573-74. The ALJ observed that despite such issues, she was able to ambulate without difficulty and had full range of motion in her neck in January of 2018. Tr. 21, 234. The ALJ considered her complaints of neck and shoulder pain in treatment notes from the alleged onset date, but noted that upon examination she had active range of motion and full ("5/5") muscle strength in her bilateral upper extremities; normal gait; an ability to tandem walk, heel walk and toe walk. Tr. 21, 245-46, 575-76. The ALJ noted that physical therapy and injections caused intermittent improvement. Tr. 22. In November of 2018 a shoulder injection was reported to provide "100% relief." Tr. 519. The ALJ considered Plaintiff's shoulder surgery and post-operative treatment in which Plaintiff reported feeling better overall and her ability to return to work. Tr. 22, 527-28. Dr. Keener opined her reports of stiffness was a good sign of healing, although Plaintiff had the tendency to be late to physical therapy appointments which caused her not to obtain the full therapy required. The ALJ also acknowledged her carpal tunnel symptoms, but noted Plaintiff was unwilling to consider surgical intervention. Tr. 22, 532.

The ALJ properly considered the medical opinion evidence in evaluating Plaintiff's subjective complaints. The ALJ acknowledged that Plaintiff does have physical impairments, which warrant some work restrictions. The ALJ's RFC and overall decision were supported by the record as a whole, and adequately explained with good reasons supported by substantial evidence. In explaining her findings, the ALJ need only "minimally articulate reasons for crediting or rejecting evidence of disability." *Strongson,* 361 F.3d at 1070 (citing *Ingram v. Chater*, 107 F.3d 598, 601 (8th Cir. 1997)).

The Court finds the ALJ appropriately discounted Plaintiff's allegations of disabling pain based on the objective medical evidence. While the ALJ may have provided more analysis, the ALJ committed no reversible error. The Eighth Circuit has recently held that an ALJ "is entitled to make a factual determination that a claimant's subjective pain complaints are not credible in light of objective medical evidence to the contrary." *Grindley v. Kijakazi*, 9 F.4th 622, 630 (2021) (citation omitted). The ALJ adequately discussed the medical evidence of record. Contrary to Plaintiff's assertions that the ALJ did not discuss the *Polaski* factors, the ALJ noted that Plaintiff's condition improved or provided relief with physical therapy, injections, and surgery. Further, the ALJ accounted for Plaintiff's problems by limiting her to light work with no overhead reaching and additional limitations. Based on the foregoing, the ALJ's decision is supported by substantial evidence in the record as a whole.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff Lucksiri Lerchaichanakul's Complaint is **DISMISSED, with prejudice**. A separate judgment will accompany this Memorandum and Order.

So Ordered this 10th day of August, 2023.

_____
STEPHEN R. WELBY
UNITED STATES MAGISTRATE JUDGE